UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANTONIO PORRAZZO, SR. | CIVIL ACTION |
| VERSUS | NO:   13-6363 |
| SOCIAL SECURITY ADMINISTRATION | SECTION: "I" (4) |

## REPORT AND RECOMMENDATION

### I.     Introduction

The claimant, Antonio Porrazzo ("Porrazzo"), seeks judicial review pursuant to Title 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), under Title II of the Social Security Act, Title 42 U.S.C. § 1382(c).

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

### II.    Factual Background

Porrazzo is a thirty-five-year-old, 165 pound, 5' 6" tall male.[1] He has a high school diploma and previously worked as a customer service representative, inventory clerk manager, tuner

---

[1] Rec. Doc. 11-3, Tr. 55.

specialist, and store trainer. In December 2008 Porrazzo had a laminectomy and was later diagnosed with a small disc herniation at L5-S1 with back pain and radiculopathy.[2]

On August 23, 2011, Porrazzo filed for a period of disability and DIB under Title II, and protectively filed for SSI under Title XVI of the Social Security Act.[3] All claims were initially denied on October 28, 2011.[4]

He alleges that he became disabled on November 07, 2008, due to severe low back pain with permanent nerve damage affecting his testicles and the right side of his body.[5] He alleges that he suffers with depression and alcohol abuse.[6] His date last insured was December 31, 2012.[7]

Porrazzo filed a written request for a hearing on December 29, 2011.[8] Christopher Juge, the Administrative Law Judge ("ALJ") held a hearing on June 25, 2012.[9] The ALJ denied Porrazzo's claims on July 16, 2012, finding that he was not disabled under the meaning of the Social Security Act.[10]

In his decision, the ALJ analyzed Porrazzo's claims pursuant to the five-step[11] evaluation

---

[2] Rec. Doc. 11-2, Tr. 23.

[3] Rec. Doc. 11-5, Tr. 152.

[4] Rec. Doc. 11-3, Tr. 53-54.

[5] Rec. No. 11-3, Tr. 55.

[6] *Id.* at 60.

[7] Rec. Doc. 11-2, Tr. 16.

[8] *Id.* at 18.

[9] *Id.*

[10] Rec. Doc. 11-2, Tr. 27.

[11] To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. *Carey v. Apfel*, 230 F.3d 131, 134-35 (5th Cir. 2000) (citing *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999)).

process used to determine whether a claimant is "disabled." Using this process, the ALJ found that Porrazzo met the insured status requirements of the SSA through December 31, 2013 and that he did not engage in substantial gainful activity since November 7, 2008, the alleged onset date.[12]

The ALJ further found that Porrazzo has a degenerative disc disease of the lumbar spine. The ALJ noted that Porrazzo has a medically determinable mental impairment of substance abuse in remission and mood disorder, which does not, individually or in a combination, rise to the level of severe.[13] He found that the record shows no evidence that these caused more than mild limitations in the claimant's ability to perform basic mental work activities or activities of daily living, social functioning and concentration, persistence or pace. He further noted that there were no episodes of decompensation.[14]

The ALJ held that Porrazzo does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 400, Subpart P, Appendix 1.[15] The ALJ further noted that Porrazzo had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with the exception that he can only sit 6 hours in an 8-hour workday before he needs to stand and stretch for a couple of

---

First, the claimant must not be presently working at any substantial gainful activity. *Id.* Second, the claimant must have an impairment or combination of impairments that are severe. *Id.* An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* (citing Crowley, 197 F.3d 194, 197-98). Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. *Id.* Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work that exists in the national economy, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.*; *see also Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

[12] Rec. Doc. 11-2, Tr. 20.

[13] *Id.* at 21.

[14] *Id.*

[15] *Id.*

minutes.[16] The ALJ also noted that he can: stand or walk 4 hours in an 8-hour workday; can occasionally climb ramps and stairs; cannot climb ladders, ropes and scaffolds; can occasionally stoop, crouch, and kneel; and cannot crawl.[17]

The ALJ further found that Porrazzo is unable to perform any past relevant work as a car lot porter, hardware sales person, amusement park manager and inventory control person.[18] Nonetheless, the ALJ concluded that the transferability of job skills is not material to the determination of disability because when using the Medical-Vocational Rules as a framework, it supports a finding that Porrazzo is not disabled.[19] The ALJ found that considering Porrazzo's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.[20] The ALJ further found that Porrazzo was not under a disability from November 7, 2008 through the date of the decision.[21]

On August 15, 2013, Porrazzo requested review of the hearing decision.[22] On September 17, 2013, the Appeals council denied Porrazzo's request for review. On November 7, 2013, Porrazzo filed the subject complaint seeking review of the Administration's decision.[23] Plaintiff seeks reversal of the ALJ's decision because (1) the ALJ erred when he found that Porrazzo did not meet the listing

---

[16]*Id.*

[17]*Id.*

[18]*Id.* at 25.

[19]*Id.*

[20]*Id.*

[21]*Id.* at 26.

[22]Rec. Doc. 11-6, Tr. 252.

[23]Rec. Doc. 1.

level 1.04; (2) substantial evidence does not support the ALJ's credibility finding or the residual functional capacity based on that finding; and (3) the new evidence submitted to the Appeals Council requires remand.[24]

The Commissioner contends that the ALJ (1) properly found that Porrazzo did not meet or equal the listing 1.04 impairment; (2) substantial evidence supports the ALJ's credibility finding and residual functional capacity findings; and (3) the Appeals Council properly considered the new evidence plaintiff submitted after the ALJ's decision.

### III.   Issues

On appeal, Porrazzo challenges:

1. The ALJ's finding that he does not meet the listing level 1.04.

2. The ALJ's credibility finding or residual functional capacity assessment is not supported by substantial evidence.

3. The Appeals Council erred when it did not remand new evidence of the treating physicians opinion because the ALJ did not have the opportunity to evaluate the opinion which is generally entitled to considerable weight in determining disability.

### IV.   Standard of Review

#### A.   Statutory and Regulatory Framework

To receive disability benefits, a SSI or DIB claimant must be "disabled" as defined by the Social Security Act. *See* 42 U.S.C. § 423(a)(1)(D), 42 U.S.C. § 1382(a). An individual is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A); *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 292

---

[24]Rec. Doc. 19.

(5th Cir. 1992).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § (d)(3); *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983).

The Social Security Regulations delineate a five-step process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. § 404.1520.  At the first step, the ALJ considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. 404.1520(b).  If he or she is, then the claimant is found not disabled, and the evaluation process is over; if he or she is not, then the ALJ must then determine whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities."  *See* 20 C.F.R. § 404.1520(c).

In the third step, the ALJ determines whether severe impairment(s) matches or is equal to any of the impairments listed in the regulations. 20 C.F.R. pt. 404, subpt. P, app. 1.  If it does, then the impairment is presumed to be severe enough to preclude any gainful activity and is acknowledged by the Commissioner as conclusively disabling.  *See* 20 C.F.R. § 404.1520(d).  However, if the impairment does not qualify under the listings, the evaluation proceeds to the fourth and fifth steps.

At the fourth step, the ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of his past work.  RFC is a measure of what an individual can do despite the limitations imposed by his impairments.  20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a).  If the claimant can perform his past work, he is not disabled and the evaluation ends. *See* 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner for the fifth step. At the fifth step, an application for disability benefits cannot be denied unless the Commissioner establishes that the claimant - in light of his age, education, job experience and functional capacity to work - is capable of performing other work and that such work exists in the national economy. 20 C.F.R. § 404.1520(f).

**B.     Judicial Review**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence, and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389 (1971). *See also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *See Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence must do more than create a suspicion of the existence of the fact to be established. A finding of no "substantial evidence" will only be found where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137,

1138 (5th Cir. 1973).

A single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly that offered by treating physicians. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts: (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [his] age, education, and work history." *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, *3 (E.D. La. Feb. 14, 2000)(citing *Martiniez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

## V. Analysis

Porrazzo contends that the ALJ's conclusion that he did not meet the listing level impairment of the musculoskeletal is not based upon substantial evidence. Porrazzo contends that his medical records show evidence of nerve root compression in September 2008. He asserts that the ALJ erred when he concluded that Porrazzo's post-surgery EMG was normal. Porrazzo further contends that the evidence from the record satisfies all requirements of the Listing 1.04A and that substantial evidence does not support the ALJ's contrary finding.

The Commissioner in contrast contends that the ALJ's decision that Porrazzo does not meet the listing level impairment is based upon substantial evidence. The Commissioner contends that the post-surgical diagnostic tests revealed normal lower extremity sensory, non-severe bulges on the right. The Commissioner contends that an old radicular injury does not meet the listing level impairment.

The Code of Federal Regulations defines Listing Level 1.04 as:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>>
>> or
>>
>> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>>
>> or
>>
>> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1

The ALJ noted that the medical sources Porrazzo sought treatment from diagnosed him with degenerative disc disease of the lumbar spine but that medical evidence did not support his allegations of physical limitations more restrictive than those listed in the residual functional capacity.[25] The ALJ noted that after surgery, two separate MRIs confirmed no additional pathology or indication of neural impingement and no acute radicular symptoms.[26] The ALJ noted that on physical examination, both done during a visit with Dr. Lundgren and the St. Charles clinic, the straight legal raising test was negative, intact strength in the lower extremities, with diminished

---

[25] Rec. Doc. 11-2, Tr. 24.

[26] *Id.* at 22.

reflexes on the left and subjective lumbar tenderness.[27] He noted that although the left leg reflexes were decreased, Dr. Lundgren and the St. Charles clinician continually characterized the findings as "stable".[28]

The ALJ further noted that Dr. Mandich, the consultative examiner, stated that Porrazzo ambulated without difficulty and was able to get in-and-out of a chair and on-and-off an exam table without difficulty.[29] He further noted that both neuro-surgeons, Dr. Miranne and Dr. Lundgren, indicated that Porrazzo was not a candidate for further surgery and recommended continued care which consisted of medication management.[30] The ALJ noted that Dr. Lundgren had noted that Porrazzo was stable when he went several weeks without pain medication, and that no medical source articulated any functional limitations inconsistent with those listed in the residual functional capacity assessment.[31] As a result, the ALJ found that the medical evidence did not support the claimant's allegations of disability.

The record shows that the ALJ properly considered the medical evidence in the record. The record shows that Dr. Mandich conducted a physical examination of Porrazzo.[32] According to the examination notes, Porrazzo ambulated well on-and-off the table and chair.[33] It was noted that he was guarding his lower back limiting the range of motion and that he was excessively guarded which

---

[27]*Id.* at 24.

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]Rec. Doc. 11-7, Tr. 385.

[33]*Id.*

exhibited self limiting behavior.[34] The record notes that he complained of pain across his lower back just below the level of the small mid lumbar discectomy scar.[35] The record further indicates that he could squat more than half way, rise without support and walk on his heels.[36] The record further indicates that the results of the straight leg raising test was negative bilaterally and the flexion of both knees in a supine position caused him to complain of increased low back pain.[37] The record also shows that Porrazzo complained that his left knee felt like it was "shattered" and that Dr. Mandich was not able to elicit any reflexes in the left leg.[38]

While the straight leg raising test performed by Dr. Mandich is reportedly negative, on October 6, 2011, the same test performed by Dr. Miranne during Porrazzo's visit on August 6, 2010, almost a year earlier, was positive on the left which is consistent with the decrease in reflexes on the left side. It appears that Porrazzo's back condition had some improvement ten months later.

Thereafter, on July 2, 2012, Porrazzo returned to Dr. Lundgren.[39] During this visit an examination was performed and he had a positive straight leg raising test on the left.[40] Dr. Lundgren also noted decreased patella reflex on the left symmetric Achilles reflex with diminished strength.[41]

On July 23, 2010, an MRI was done and showed that there were no definite signs for

---

[34] *Id.*

[35] *Id.*

[36] *Id.* at 386.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 459.

[40] *Id.*

[41] *Id.*

11

recurrent disc herniation at the L3-4 level.[42] There was a broad-based herniation lateralizing greater to the right as compared to the left.[43] Contrary to the ALJ's findings that through Porrazzo's treatment the physical examination showed negative straight leg raise results, the evidence shows that at least in August 2010 and July 2, 2012 the results were positive.[44] In addition to the positive straight leg raising results, Porrazzo had reflex loss on the left. The Court notes that although the ALJ's opinion was issued after the July 2, 2012 positive results, the results are not reflected in the ALJ's opinion.

Further, both MRIs indicate that the right S1 nerve root was also seen on examination and remained unchanged but is more likely to be secondary to a venous congestion along the nerve root and not a sign of arachnoiditis.[45] Venous congestion is a condition which is common in the roots of the radicular veins and is a form of nerve compression physiology.[46] The Court therefore finds that Porrazzo, satisfies the Listing Level 1.04. Consequently, the decision of the ALJ is reversed and the matter is remanded for the award of benefits.

## VI.    Recommendation

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Antonio Porrazzo Disability Insurance Benefits s be **REVERSED** and **REMANDED** for benefits.

A party's failure to file written objections to the Proposed Findings, Conclusions, and Recommendation in a Magistrate Judge's Report and Recommendation **within fourteen (14) days**

---

[42]*Id.* at 289.

[43]*Id.*

[44]*Id.* at 460

[45]Arachnoiditis is a debilitating condition characterized by severe stinging and burning pain and neurologic problems. Arachnoiditis is caused by an inflammation of the arachnoid lining which causes constant irritation, scarring and binding of nerve roots and blood vessels.

[46]Christopher Kent, M.D., *Nerve Compression Physiology*, Chiropractic Leadership Alliance (Oct. 31, 2014), http://www.subluxation.com/nerve-compression-physiology.

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 7th day of November 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**